UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               CASE NO. 6:17-cr-159-Orl-40DCI

MEINRAD KOPP,

       Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, MEINRAD KOPP, through undersigned counsel, and files this Sentencing Memorandum.

Mr. Kopp acknowledges the serious nature of the crime to which he plead guilty and takes full responsibility for his conduct.  Mr. Kopp submits the statutory mandatory minimum sentence of 10 years in prison is an appropriate sentence in this case.  When taking into account the nature and circumstances of the offense, the lack of prior criminal history as well as the personal characteristics of Mr. Kopp, this is an appropriate sentence. This sentence is "sufficient but not greater than necessary" to serve the purpose of sentencing set forth in 18 U.S.C., § 3553 (a)2 and considers the fact that he will be immediately deported to his home country of Germany upon the completion of his sentence.

## I.  INTRODUCTION

On June 16, 2017, Mr. Kopp was arrested for the charges in this case.  On July 12, 2017, an Indictment was issued against Mr. Kopp.  On September 22, 2017, Mr. Kopp

1

pled guilty to Count One of the Indictment, charging that on April 26, 2017, continuing through June 16,2017, Mr. Kopp attempted to persuade, induce, or entice a person he believed to be a minor, through an adult intermediary, to engage in sexual activity in violation of  U.S.C. § 2422(b).

Mr. Kopp respects the legal process and takes full responsibility for his actions. Mr. Kopp files this Sentencing Memorandum in an effort to assist the Court in imposing a just and fair sentence in this case.

Mr. Kopp is currently 55 years old.  He has never been arrested prior to this case and had no contact with law enforcement officers.  Prior to this arrest, he lived a productive life as a successful pharmacist developing life-saving drugs.  A major part of his core character is his desire to help others, including millions of patients all throughout the world. This will be discussed further below.

To differentiate, but not minimize, his conduct from other offenders in terms of culpability, Mr. Kopp's conduct began by a undercover law enforcement officer posting an advertisement on an adult website.   Had the undercover officer not reached out to Mr. Kopp, the Defendant would never had committed the action in this case.  Mr. Kopp was living in Switzerland at this time.  During the course of a two-month period, Mr. Kopp and the undercover law enforcement officer engaged in communications by instant message and by email regarding the three of them engaging in sexual conduct with the undercover agent's fictitious minor daughter.  Mr. Kopp did not have any personal conduct with an actual minor individual.  In fact, all of Mr. Kopp's communications and contact occurred with an adult intermediary.  Mr. Kopp did not send any nude pictures of himself to any minor.  In addition, a review of the communications between Mr. Kopp and the undercover

agent suggests a lack of persuasion by Mr. Kopp to the undercover agent to engage in the unlawful activity with a fictitious minor in that Mr. Kopp:  1) did not create any advertisement; 2) simply responded to a fabricated advertisement created by the undercover agent which read as follows:  "dad with young girl looking for others who enjoy fucking young girls"; 3)  agreed to the terms and rules set by the undercover agent; and 4) reacted and responded to the undercover agent's question regarding what conduct would occur with his fictitious minor daughter.   Further, the undercover agent was persuading and encouraging Mr. Kopp to engage in such illegal conduct by telling him that he engages in sexual activity with his daughter and that he and his daughter had regular sexual activity with other couples.

A review of Mr. Kopp's email and text messages reflect that he did not have any communications with a minor.  Additionally, Mr. Kopp's: 1)  history and characteristics as a person, including his professional history; 2)  close relationship with and support of his family and friends; 3)  age; 4)  lack of any criminal record; 5)  acceptance of responsibility; and 6)  his detrimental health; and 7)  low risk of recidivism are all strong factors which support the statutory mandatory minimum sentence of ten years in prison.

## II.   SENTENCING AFTER THE UNITED STATES SUPREME COURT'S DECISION IN *BOOKER*

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), the United States Supreme Court declared unconstitutional the portion of the Sentencing Reform Act, 18 U.S.C. § 3553(b)(1), which made the Federal Sentencing Guidelines mandatory.   As a result, the Supreme Court's decision rendered the Sentencing Guidelines advisory in nature.  The *Booker* Court's holding "requires a sentencing court

to consider Guidelines range, but permits the court to tailor the sentence in light of other statutory concerns as well," such as the individual characteristics of the defendant or the circumstances of the offense.   *Id.*   Post-*Booker*, the Supreme Court repeatedly emphasized the importance of the Sentencing Commission in formulating the sentencing guidelines in light of its institutional expertise and its focus on empirical analysis:

> While rendering the Sentencing Guidelines advisory . . . we have nevertheless preserved a key role for the Sentencing Commission . . . .  Congress established the Commission to formulate and constantly refine national sentencing standards . . . .  Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to "base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."

*Kimbrough v. United States*, 552 U.S. 85, 108-09, 128 S.Ct. 558 (2007).

In light of the Supreme Court's decision in *Booker*, district courts are now required to consider both the sentencing goals in 18 U.S.C. § 3553(a) and the Sentencing Guidelines when imposing a sentence.  *See, United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006*); United States v. Williams*, 435 F.2d 1350 (11th Cir. 2006).

Pursuant to 18 U.S.C. § 3553(a), "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection."  (Emphasis added.)  This provision is the overarching command of the statute.  *United States v. Riley*, 655 F.Supp. 2d 1298 (S.D. Fla. Sept. 5, 2009).

Thus, in imposing a sentence, a district court must consider the following factors in 18 U.S.C. § 3553(a):

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)     the need for adequate deterrence;

(4)     the need to protect the public;

(5)     the need to provide the defendant with needed educational or vocational training, or medical care;

(6)     the kinds of sentences available;

(7)     the Sentencing Guidelines range;

(8)     pertinent policy statements of the Sentencing Commission;

(9)     the need to avoid unwarranted sentence disparities; and

(10)    the need to provide restitution to any victims of the offense.

Although a district court is no longer bound to apply the guidelines, it must consult and take them into account.  In order to properly consult the guidelines, a district court must accurately calculate an advisory guideline range.  *Williams,* 435 F.3d at 1353; *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005).  After it has made this calculation, however, the district court may impose a more lenient sentence as long as the sentence is reasonable.  *See, e.g., United States v. Halsema*, 180 Fed.Appx. 103 (11th Cir. 2006)(24-month sentence for possession of child pornography reasonable where advisory guideline range prescribed sentence of 57-71 months).

### III.  APPLICATION OF THE ADVISORY GUIDELINES

A conviction on Count One of the Indictment carries a mandatory minimum sentence of ten (10) years in prison and a maximum term of imprisonment for life, a maximum fine of $250,000.00, a term of supervised release of at least five (5) years to life, and a special assessment of $100.00.

The Final Presentence Investigation Report (PSR) was completed by the United States Probation Office on November 27, 2017.  The Final PSR provides for an advisory guideline imprisonment range of 120 months (the statutorily required minimum sentence). Mr. Kopp's range, if calculated only under the Federal Sentencing Guidelines, would be 78-97 months.

### IV.  REASONABLE SENTENCE

Mr. Kopp understands that it has been determined that he broke the law and that he must be punished for his crime. However, in fashioning a reasonable sentence, this court must consider all the factors set forth in 18 U.S.C. § 3553(a).

## A.      History and Characteristics of Meinrad Kopp

Mr. Kopp was born in Kenzingen, West Germany, on December 19, 1961, and is a citizen of that country.  He had one brother, who was six years older than him.  He and his brother were raised by his father and mother, growing up in Hecklingen, Germany, a small village of about 700 people.  His mother became seriously ill with thyroid cancer in 1969, and passed away at the age of 47 years old when Mr. Kopp was a 9-year old child in 1971.  Thereafter, he was raised by his father, a violent alcoholic.  His father passed away as the result of strokes in 1993.  Mr. Kopp's whole family has a very low life expectancy as can be seen on Mr. Kopp's brother's early expiration at only 55 years old.

As a young child, Mr. Kopp was subjected to seeing his mother being beaten by his father, who, as previously mentioned, was a violent alcoholic.  At the age of 9 years, his mother passed away and his older brother (who was 16 at the time) left home.  His mother was suffering from thyroid cancer and died because the father did not allow her to get medical treatment.  Mr. Kopp and his brother held their father responsible for his mother's death.  Although there was no sexual abuse, Mr. Kopp became the target of his father's violence.  He was physically and verbally abused and beaten.  This continued until Mr. Kopp reached his midteens, at which time he had become physically strong enough to defend himself against his father.  His father then began hiding Mr. Kopp's school books and kicking him out of the house on occasion so that Mr. Kopp would have to stay with other families temporarily.  In the first 16 years of his life, the most formative years in a person's life, Mr. Kopp was subjected to constant violence and terror.  After the age of 9, he received no love and affection, scarring him for life.

7

Mr. Kopp was a good student and worked hard to achieve a successful career. After graduating from high school, he attended the University of Freiburg, becoming a pharmacist and later earning his Ph.D. in biochemistry and molecular biology. He performed his mandatory military service from January 1981 through March 1982. After he received his doctorate, Mr. Kopp began a career in the pharmaceutical industry. From the beginning, his work was focused on drug development. His career and employment were driven by an underlying motivation to help others. This was apparent not only on the level of dedication to the development of the drugs, but also by his unselfish patient care. A large part of his practice was focused on clinical trials with again, the focus on helping others. He always fought for the patient and the patient's health which is also reflected in the character letters. He worked for three years with Roche, in the field of new drug development, then for the next nine years he worked for Thermofisher in the field of clinical drug development. He moved to Merck, remaining in the field of clinical drug development, where he was working at the time of his arrest in this case.

He helped develop life-saving medications during his career in the pharmaceutical industry. There was a strong focus on cancer and he is an expert in electronic labels for clinical trials. He is a globally recognized expert and spoke at various scientific conferences. He has been involved in the recruitment of personnel for one of the biggest Pharmaceutical company Merck. One of the drugs he helped develop by the name of Keytruda has saved millions of cancer patient. These cancers including melanoma, lung cancer, neck cell carcinoma and Hodgkin's lymphoma, including pediatric lymphoma.

Mr. Kopp has never married. However, he has been in a live-in relationship with his significant other, Gianna Vitali (age 42 years), for 20 years. Ms. Vitali continues to

support Mr. Kopp at this time.  At the time of his arrest, Mr. Kopp lived with Ms. Vitali in Hergiswil, Switzerland.

There is strong support for Mr. Kopp from those who know him and have known him for many years, as is evidenced by the attached letters (Composite Exhibit C filed with the Objections to the Presentence Investigative Report):

a.  Mr. Kopp's significant other, Gianna Vitali;

b.  Astrid Frank;

c.  Christine Grossmann;

d.  David Grossmann;

e.  Judit Grossmann; and

f.  Wolfgang Hubbauer.

A reading of these letters spotlight Mr. Kopp's caring and giving nature.  He acted as a mentor to fellow employees, aiding them to advance in their careers.  He was generous with his time and resources.  For example, there were times when developing clinical trials where Mr. Kopp's team would need to work late hours or over a weekend. After a late-hour shift, Mr. Kopp always ensured that his fellow employees were safely in their cars before he went back and locked up the office.  When they needed to work over a weekend, there was no food provided by the office.  Mr. Kopp organized food for the entire team.  Mr. Kopp was dedicated to his work, always keeping in mind the end result of a patient receiving life changing - or life saving - new medications.

Mr. Kopp's friends describe him as very supportive, a good listener, a dear friend, generous, patient, open, loving, warm-hearted, attentive, a loyal friend, candid, honest, caring and present.  His friend Christine König-Grossmann advises the Court that she

9

trusted Mr. Kopp with watching her children and he never betrayed that trust.  He became a part of her family like a brother. He was well-liked and cherished.  Her son, David, describes him as responsible, loving, and trustworthy - he always felt protected in Mr. Kopp's presence.   Ms. Christine König-Grossmann's daughter, Judit, indicates she compares her relationship with Mr. Kopp as to an uncle.  She was very happy when he visited, she likes and trusts him.

Mr. Kopp understands the serious nature of the charges against him.  While not acceptable behavior by any stretch of the imagination, one might see where his life has been strongly impacted in a negative way by the preventable death of his mother and the physical abuse of his father.    Additionally, it is medically possible that Mr. Kopp's abnormal formation in the brain had some influence on his criminal behavior.

One of his good friends, Astrid Frank, reports that Mr. Kopp has acknowledged to her that his actions and thoughts were wrong and he never tried to minimize his actions. He reported to her that he felt ashamed, deeply humiliated, and very troubled about his actions.  Ms. Vitali also reports that Mr. Kopp told her many times that he deeply regrets his mistake.  She implores the Court to view not just one mistake in Mr. Kopp's life, but to realize that the entire rest of his life has been consumed with doing positive and outstanding things both in his work and with his friends and acquaintances, always helping others and putting them first.

When considering the totality of the man who is Meinrad Kopp, the preventable loss of his mother at such an early age, the physical and emotional abuse of his father, and his history and generosity and supportive character described by his loved ones, he is not the dangerous offender that the Government is portraying.  He is a man who made

a terrible mistake and understands that he must pay a price - even over and above the punishment he feels every day from his own feelings of shame, humiliation and despair. Although his taking full responsibility for his actions, it is important to point out, that this type of crime is influenced by psychological impairment, such as in this case, Major Depression Disorder (2015 Psychological Records which are forthcoming and Dr. Danziger's report, filed as Exhibit B with the Presentence Investigative Report), Sexual Sadism Disorder and now comes Pedophilic Disorder.

**B.      Need for Just Punishment in Light of the Seriousness of the Offense**

In fashioning an appropriate sentence, the Court must consider the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of Mr. Kopp. 18 U.S.C §3553(a)(2). In Mr. Kopp's case, all these purposes may be properly served with a sentence of 120 months.

Additionally, it is important to note that the Defendant has a shortened life expectancy based on his current life threatening medical condition.  After having suffered a stroke in 2012, Mr. Kopp has been suffering from a stenosis, a blocked artery in his brain exposing him to a high risk of suffering a deadly stroke at anytime.  There are additional risk factors such as diabetes, high cholesterol and high blood pressure  which expose him to a very high risk for a mild myocardial infarction or stroke.  (See Exhibit B filed with the Presentence Investigative Report).

**C.      Sentencing Guidelines and Policy Statements**

While the Court must consider the applicable guideline range and Sentencing Commission policy statements pursuant to 18 U.S.C. § 3553(a)(4) and (5), any sentence

11

within this range would be "greater than necessary" to serve the purposes of sentencing in Mr. Kopp's case.

### D.     Need to Avoid Unwarranted Sentencing Disparities

Also included among the § 3553(a) factors to be considered by the Court at sentencing is the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct.  18 U.S.C. 21 3553(a)(6).  Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing."  U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing:   An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 113 (2004).

The Court is respectfully requested to take note of *United Sates v. Justin Jennings Herring*, Case No. 6:12-cr-147-Orl-37GJK, in the Middle District of Florida, Orlando Division.  Mr. Herring was a 30-year old defendant charged with the same offense as Mr. Kopp - one count of Coercion or Enticement of Minor (to engage in a sexual activity) in violation of 18 U.S.C. § 2422(b).  After a jury trial on September 10-11, 2012, this Court found Mr. Herring guilty as charged and, on November 26, 2012, sentenced Mr. Herring to imprisonment in the United States Bureau of Prisons for a total term of 130 months, followed by 15 years of supervised release (Exhibit D).  Again, Mr. Herring was 30 years

old at sentencing, a young man.  He is 34 years old today.  The Court is respectfully requested to take note of the disparity in ages between Mr. Herring (age 30 at sentencing) and Mr. Kopp (age 55 at sentencing).

While studies showed higher rates of recidivism for non-sex offenses for "child molesters," general recidivism studies show that those in Mr. Kopp's circumstances - those over fifty years of age and who find themselves in Criminal History Category 1 - have an especially low rate of recidivism.  See United States Sentencing Commission, *Measuring Recidivism: Criminal History Computation of the Federal Sentencing Guidelines* (2004).  The full report is available at www.ussc.gov/publicat/recidivism_G.pdf.  Of all the different categories, the rate for those in Mr. Kopp's category is the lowest listed, 6.2%.  There is a suggestion in the research, that those like Mr. Kopp who have no prior arrests, have even lower rates of redicivisim than others in Criminal History Category I with prior arrests or one criminal history point. Measuring Recidivism, supra. at 15. That compares, for example, to an overall recidivism rate of, for example, 31.9% in those from ages 21 to 25.  Significantly, too, sex offenders who participate in "relapse prevention treatment programs" have a reduced risk of recidivism.  *Recidivism of Sex Offenders*, *supra*, at 13.  Were this Court to impose the mandatory minimum ten-year sentence in this case, Mr. Kopp would be 65 years old, so his overall chances of recidivism would surely be even further reduced.

The Seventh Circuit last year provided some guidance to trial judges in considering a defendant's age at sentencing:

> There is much that federal sentencing judges are required to consider in deciding on a sentence to impose - maybe too much: the guidelines, the statutory sentencing factors, the statutory and regulatory provisions relating to conditions of supervised release, presentence reports, briefs and arguments of counsel, statements by defendants and others at sentencing hearings.  But in thinking about the optimal sentence in relation to the problem of the elderly prisoner, probably the judge's primary focus should be on the traditional triad of sentencing considerations: incapacitation, which prevents the defendant from committing crimes (at least crimes against persons other than prison personnel and other prisoners) until he is released, general deterrence (the effect of the sentence in deterring other persons from committing crimes), and specific deterrence (its effect in deterring the defendant from committing crimes after he's released).  A sentence long enough to keep the defendant in prison until he enters the age range at which the type of criminal activity in which he has engaged is rare should achieve the aims of incapacitation and specific deterrence, while lengthening the sentence is unlikely to increase general deterrence significantly if the persons engaged in the criminal activity for which the defendant is being sentenced have a high discount rate; for beyond a point reached by a not very long sentence, such persons tend not to react to increases in sentence length by abandoning their criminal careers.

*United States v. Presley*, 790 F.3d 699, 703 (7th Cir. 2015).

In a related context, the Office of the Inspector General (OIG) for the Department of Justice recently determined that many aging inmates in the Bureau of Prisons (BOP) have lower rates of misconduct while incarcerated and upon release. One part of the report stated the following:

> That again inmates have fewer misconduct incidents while incarcerated and a lower rate of re-arrest after release.  Our analysis concluded that aging inmates comprised 10 percent of all BOP misconduct incidents in FY 2013, while accounting for 19 percent of the entire population.  Based on our research and discussions with BOP officials and staff, we consider the rate of misconduct by aging inmates during incarceration to be relatively low compared to younger inmates.  In addition, we found that only 15 percent of a sample of aging inmates

> released from BOP custody was re-arrested for a new crime within 3 years. Based on studies by the BOP and the BJS, we also consider the rate of re-arrest for aging inmates to be relatively low compared to the re-arrest rates of younger inmates. Therefore, while individual cases will vary, aging inmates are generally less of a threat during incarceration and less likely to be a threat to society once released.

Office of the Inspector General, U.S. Department of Justice, The Impact of an Aging Inmate Population on the Federal Bureau of Prisons 52 (2015), https://oig.justice.gov/reports/2015/e1505.pdf.

Courts have observed that the reduced recidivism rate that comes with age is a valid consideration, pursuant to 18 U.S.C. § 3553(a). *Simon v. United States*, 361 F.Supp.2d 35, 48 (E.D.N.Y. 2005). Indeed, in sentencing the defendant in *Simon* to 62 months below the low end of the guideline range, the district court stated: "The Guidelines' failure to account for this phenomenon renders it an imperfect measure of how well a sentence protects the public from further crimes of the defendant." *Id.* at 48. In this case, the court granted a substantial downward variance based on the fact that, with age, comes the reduced risk of recidivism, which lessons the need to deter the defendant and protect the public. Thus, this Court can take into account Mr. Kopp's age and medical conditions in fashioning its sentence.

Historically, sentences imposed for the offense have been at or near the advisory guideline imprisonment range.  Within the Eleventh Circuit, in those cases where it is clear from the opinion the children were fictional and the defendant was speaking only with a government agent, the sentences are, typically, in the vicinity of ten years or less.  *See. United States v. Barnett*, 260 Fed. Appx. 206 (11th Cir. 2007)(80 months, case was subject to five-year minimum mandatory, not ten); *United States v. Thomas*, 255 Fed. Appx. 422 (11th Cir. 2007)(144 months); *United States v. Williams*, 2007 WL 3118326 (11th Cir. October 25, 2007)(where the fictional victim was 11 years old and the defendant received 135 months); *United States v. Segalla*, 248 Fed. Appx. 148 (11th Cir. 2007)(120 months); *United States v. Bohannon*, 476 F.3d 1246 (11th Cir. 2007)(120 months); *United States v. Houston*, 177 Fed. Appx. 57 (11th Cir. 2006)(60 months, 2005 arrest, case was subject to five year minimum mandatory, not ten); *United States v. Haynes*, 160 Fed. Appx. 940 (11th Cir. 2005)(78 months); *United States v. Scott*, 426 F.3d 1324 (11th Cir. 2005)(where the fictional children were 6 and 4 years old and the defendant received a 135 month sentence, low end of the 135-168 month range); *United States v. Bolen*, 136 Fed. Appx. 325 (11th Cir. 2005) (where the fictional child was 3 years old and the defendant received a sentence of 110 months).

**Middle District of Florida:**

*United States v. Derek Corker*, Case No. 6:17-cr-46-Orl-37GJK (2017) (120 months) (defendant engaged in series of online conversations with someone he thought to be the father of a 13-year-old, actually an undercover agent. Defendant drove to meet the child for sex and was arrested with ten condoms and drugs)

*United States v. Paul Ralph Newton*, Case No. 6:16-cr-39-Orl-41KRS, in the United States District Court for the Middle District of Florida, Orlando Division (2016)(120 months) (Mr. Newton attempted to persuade, induce, or entice a person Mr. Newton believed to be a minor, through an adult intermediary, to engage in sexual activity in violation of 18 U.S.C. § 2422(b)).  Mr. Newton's conduct involved him using his personal cell phone to access a Craigslist Advertisement created by law enforcement over a five-week period of time between January 6, 2016, and February 10, 2016.

Similarly, to Mr. Newton, Mr. Kopp's conduct did not involve him having any conduct with an actual minor individual.  In fact, all of their (Kopp's and Newton's) contact occurred with an adult intermediary.  Mr. Kopp did not send any nude pictures of himself to any minor.  In addition, a review of the communications between Mr. Kopp and the undercover agent suggests a lack of persuasion by Mr. Kopp to the undercover agent to engage in the unlawful activity with a fictitious minor in that he: 1) did not create any advertisement; 2) simply responded to a fabricated advertisement created by an

17

undercover agent of the government; 3) agreed to the terms and rules set by the undercover agent; 4) reacted and responded to the undercover agent's suggestion.

**<u>Northern District of Florida</u>**:

Cases from the Northern District of Florida show the same sort of sentencing pattern.  See *United States v. Ylmazel*, Case No. 4:06-cr-85 (60 months); *United States v. Duke*, Case No. 4:07-cr-65 (120 months); *United States v. Liton*, Case No. 4:07-cr-66 (120 months).

Mr. Kopp would also respectfully direct the Court's attention to *United States v. Weiner*, Case No. 1:17-cr-00307-DLC, in the United States District Court for the Southern District of New York.  In that case, Mr. Weiner and the United States reached a negotiated settlement in which Mr. Weiner entered a plea of guilty to one count of transferring obscene material to a minor in violation of Title 18, USC § 1470, which carries a maximum term of imprisonment of ten years, a maximum term of supervised release of three years, and a maximum fine of $250,000.00.  The calculated Guidelines range for Mr. Weiner was 135 to 168 months imprisonment, but the parties stipulated to a 120 month imprisonment range and that neither a downward nor an upward departure was warranted.  The parties further agreed that either party may seek a sentence outside of the Stipulated Guidelines Range, and "In light of the specific circumstances of the offense conduct in this case and because the substantially increased Guidelines range results from the cross reference to different sections of the Guidelines, the Government submits that a sentence within the range of 21 to 27 months' imprisonment (which would be the applicable Guidelines range without application of Cross-Reference-1. U.S.S.G. § 2G3.(c, because the offense involved receiving and possessing material involving the sexual

exploitation of a minor, U.S.S.G. § 2G2.2(c) applies and Cross-Reference-2  U.S.S.G. § 2G2.2(c), because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing  visual depiction of such conduct and for the purpose of transmitting a live visual depiction of such conduct, and because the offense level under U.S.S.G. § 2G2.1 is greater that then offense level under U.S.S.G. § 2G2.2, U.S.S.G. § 2G2.1 applies - would be fair and appropriate." Mr. Weiner entered a plea of guilty for having transferred obscene material to an actual minor, a 15-year old child.  Mr. Kopp, on the other hand, as the result of an invitation fabricated by an agent for the United States Government, merely traveled to Orlando to meet with a fabricated father and daughter. Although sexual activity with a minor was implied, in actuality, Mr. Kopp never met an actual minor, never received a picture of an alleged minor, and never sent any obscene material.  There were no direct communications between Kopp and a minor with sexual content.  Mr. Weiner was sentenced to 21 months in prison.

**Southern District of Florida**:

Please see *United States  v. Anthony Moussa*, 13-cr-20793, Honorable District Court Judge Altonaga. The Defendant in this case made direct contact with a 9 year-old boy.  The direct communications were via XBOX, telephone call and text.  During a video conferencing, there was full sexual exposure.  The Defendant also had prior investigation and arrests for the same offense.   The Defendant was charged and pled with the same offense as Mr. Kopp and received a sentence of 150 months in jail and 30 years supervised release.

## V.  COLLATERAL CONSEQUENCES OF SENTENCING AND INCARCERATION

Mr. Kopp has been suffering from severe personal and professional mental stress as it is supported through his 2015 psychological treatment as well as his suicide attempt while in custody on this case.  He has no family or support in the United States and is suffering the void of family life.  Mr. Kopp lost his job with Merck and all benefits.

His reputation, privately and professionally, has been destroyed forever.  The media coverage increased the loss of reputation drastically.  Mr. Kopp used to be a tenor solist in church and he lost this position as well.

## VI.  CONCLUSION

Mr. Kopp is fully aware that his conduct was inappropriate and illegal.  He understood this immediately and was thus very willing to cooperate completely with law enforcement.  He is ashamed, humiliated, and aghast that he allowed himself to fall into such a dark hole.  However, Mr. Kopp's conduct was one isolated incident in a lifetime of exemplary behavior.  For five weeks - out of his 55 years - Mr. Kopp was unable to control the stress and depression from which he was suffering.  He will never allow that to happen again.

Mr. Kopp is 55 years old.  He has no prior criminal record of any kind.   The letters of support provided to the Court (composite Exhibit C filed with the Objections to the PSI Report) are compelling and demonstrate that Mr. Kopp continues to receive the support of his family and friends.

There is no doubt that Mr. Kopp must be punished for this offense and that the law mandates that he must be sent to prison for at least ten years.  There can also be no

doubt that, given his age, his medical condition, and the other qualities discussed herein, Mr. Kopp is not a danger to the public and has a low chance of offending at the age of 65. The undersigned would submit that, given the above factors, a sentence of ten years, followed by immediate deportation to Germany, would be a reasonable sentence in this case. The imposition of such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

## VII.  REQUEST FOR RECOMMENDATION FOR PLACEMENT AT A MEDICAL FACILITY

Mr. Kopp petitions this Court to allow him to serve his time at a facility that can service his medical and psychological needs.  He would like to receive treatment for his psychological disorders and most importantly hopes that at a medical facility his detrimental health can be addressed best.  The stenosis of the artery in the brain with the poorly managed diabetes and high cholesterol, extremely predispose him for further strokes and other medical complications.   As previously outlined, his suffering from numerous mental and physical illnesses.

Respectfully submitted this 6th day of December, 2017.

## VIII.  CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of December, 2017, I have electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to the following: Ilianys Rivera Miranda, Assistant United States

Attorney, United States Attorney's Office, Suite 3100, 400 W. Washington Street, Orlando,

Florida  32801, ilianys.rivera@usdoj.gov.


s/ Bijan S. Parwaresch
Bijan S. Parwaresch, Esquire
407 Lincoln Road, Suite 12E
Miami Beach, Florida 33139
Telephone: 305-505-8858
Facsimile:   305-534-7087
Bijanlaw@aol.com
Bijanpar@aol.com