United States District Court
of the Middle District of Florida
Orlando

FILED
2020 AUG 14 PH 2:03

Meinrad Kopp,
Petitioner,

v.

United States,
Respondant.

Case no.: 6:17-cr-159-OL-40DCI

2020 AUG 14 PH 2:03

Motion for Compassionate Release According to 18 USC
§3582(c)(1)(A) Due to COVID-19 Pandemic and Extra-
ordinary and Compelling Reasons.

I.     COMES NOW, Meinrad Kopp, hereinafter called Pe-
titioner requesting compassionate release according to 18
USC §3582(c)(1)(A) for extraordinary and compelling
reasons due to the CORONAVIRUS (COVID-19) pandemic
in the United States of America.

    Petitioner is submitting this motion pro-se and
Petitioner kindly reminds this Court that pro-se pleadings
of pro-se parties such as [Petitioner] in the instant motion
are to be liberally construed and pro-se complaints,
however inartfully pleaded, must be held to less stringent

1/16

stringent standards than formal proceedings drafted by lawyers."
See Erickson v. Pardus 551 U.S. 89, 94, 127 S.Ct. 2197 167 L.
Ed. 2d 1081 (2007). See also Richardson v. U.S. 193 F3d 545,
548 338 U.S. App. DC 265. Petitioner also wants to remind
this Honorable Court of the fact that inmates have no access to
information normally available to the public via Internet as the BOP
does not provide access to the Internet. Guidelines from the Center
of Disease Control (CDC) and other sources quoted in this motion
can therefore not be included as hardcopies, but will insted be cited
with Internet hyperlink descriptions or quoted directly where
available.


II   _Petitioner's pre-existing medical conditions_

       Petitioner suffers from multiple medical conditions that
make Petitioner medically vulnerable and put him at high risk
if COVID-19 is contracted. Petitioner is 58 years old (DOB
12/19/1961) and suffers from medical conditions that match
the risk factors identified by the CDC and other sources that
can lead to severe complications and possible death if
COVID-19 is contracted. See also "WHO-China-Joint-Mission-
Report: Age, Sex, Existing Conditions of COVID-19 Cases and
Deaths." In specific, Petitioner suffers from
       a.   Type II diabetes    (See Exhibit No.1, page 1 of 2, Lines C,D,E,G)
       b.   Hypertension  (see Exhibits No: 1, page 1 of 2, Line F; No.2, pg. 2 of 2, Line A)
       c.   High Cholesterol    (See Exhibit No.1, pg 1 of 2, Line B)
       d.   Beginning renal impairment (See Exhibit No.3, pg.1 of 1, Line A)
       e.   Possible beginning arthritis   (see Exhibit No.4, pg.1 of 1, Line A)

f. a stenosis of a brain artery that supplies the brain with blood/oxygen (See Exhibit No. 5, page 1 of 1, Line A)

g. other medical conditions such as: 1. major depressive disorder, recurrent; 2. Presbyopia; 3. Unspecified hearing loss, 4. Tinnitus, and 5. High levels of Triglycerides (Exh. No 6, pgs. 1/2, lines C-F; No. 7, Pg 1/2, Line A)

Especially, but not exclusively, condition f.) puts Petitioner at a significant elevated risk of complications or death should he contract COVID-19. During autopsies of COVID-19 related deceased patients, blood clots were found all over their examined bodies, concluding that COVID-19 may cause blood clots. The Coronavirus' ability to cause blood clots in the human body could lead to a complete blocking of the brain artery that supplies the brain with blood/oxygen which is already blocked to a 70% degree. (See Exhibit No. 6, page 1 of 2, Line I)

Moreover, unlike >99% of all humans who have a left and a right neck artery that ascend to the brain, Petitioner lacks one of them and the blood/oxygen supply of the brain is therefore solely dependent on the one remaining, but highly blocked artery. A further and most likely total blockage of that artery by a blood clot caused by COVID-19, could cause a stroke with immediate fatal consequences.

Furthermore it should be noted that Petitioner suffered from several TIA's in 2012. A TIA (transient ischemic attack) is a milder form and a precursor of a possible full blown stroke. For COVID-19 related blood clots see: https://www.webmd/lung/news/20200424/
blood-clots-are-another-dangerous-COVID-19-mystery

## III Grounds for Compassionate Release
### a. General Background

A new coronavirus, called COVID-19, was first discovered in China by the end of 2019 and thereafter quickly spread around the globe and caused a global pandemic. Since late June and early July 2020, the United States have seen a significant surge in COVID-19 infections especially in the South and West of the country. On July 7, it was reported that Arizona had the highest per capita infection rate of the United States. To date the novel coronavirus has caused almost 5 Million of infections and more than 156.000 deaths in the United States only. Models (IHME) predict that by November 2020 the total death toll could rise to 230 000.

B. <u>Medical Background</u>

1. The virus has proven to be especially dangerous and harmful to the elderly population and people with pre-existing medical conditions.

2. In Morris v. US, US Dist. lexis 60499, April 6, 2020 the court quoted the CDC saying: "older people and people of all ages with severe underlying health conditions, like heart disease, lung disease, and diabetes seem to be at a higher risk of developing serious COVID-19 illness." This statement can be found under the following Internet link www.cdc.gov/coronavirus/2019-ncov/specific-group/high-risk-complications.html and reading the embedded article: "Information for Health Care Professionals: COVID-19 and underlying conditions." CDC March 23, 2020.

3. In US v. Reed, US Dist. lexis 104220, June 13, 2020 the

court cites the CDC stating that "people of any age who have serious underlying medication conditions may be at higher risk for severe illness from COVID-19 including hypertension, diabetes, heart disease, prior stroke, lung disease and chronic kidney disease have all been associated with increased illness severity and adverse outcomes." See CDC "Interim Clinical Guidance for Patients with Confirmed Coronavirus Disease."

4. In Frazier v. Kelley, US Dist. Lexis 90821, May 19, 2020 Plaintiffs cite the CDC's risk classification and quote for the subclass A (high risk) "... people aged 50 or over and who have serious underlying medical conditions that put them at particular risk of serious harm or death from COVID-19, including but not limited to people with respiratory conditions such as chronic lung disease or asthma; people with heart disease or other conditions; people who are immuno-compromised as a result of cancer, HIV/AIDS, or for any other reason, people with chronic liver or kidney disease, or renal failure (...) people with diabetes, epilepsy, hypertension, blood disorders, (...) or an inherited metabolic disorder ... "

Although the court declined to address matters related to the Plaintiff's class allegations it made this decision based on 8th Amendment and ADA claims. It did not dispute the CDC's classification.

5. In Diaz v. Acuff, US Dist. Lexis 70650, April 21, 2020 the court cites the WHO reporting significantly elevated mortality rates in its "WHO-China-Joint-Mission Report. Age, Sex, Existing Conditions of COVID-19 cases and Deaths."

Mortality rates for patients with diabetes were reported to be 9.2% and for patients with hypertension 8.4%. The report does not give any numbers for patients with co-morbidities, but it can be safely assumed that mortality rates are at least at the same level, most likely however higher.

This means that one out of ten people with one or more such pre-existing condition faces death if he or she contracts COVID-19.

The CDC has constantly updated its guidelines with regards to possible complications for people with pre-existing medical conditions and has done so on June 25, 2020 and on July 23, 2020. During the July 23 update the CDC reported through public media that the risk for the elderly population with pre-existing conditions is

- 6 times higher to get hospitalized
- 5 times higher to be admitted to the ICU
- and 12 times higher to face death

  when compared to a younger, healthy population.

All CDC guidelines were addressed to the larger population of the United States and are not exclusive, i.e., other medical conditions may apply. Nevertheless, the CDC reported that type II diabetes, heart diseases, and asthma are the top three medical conditions that make people more vulnerable to complications if they contract COVID-19.


c. Other Sources

In addition to the CDC's guidelines, other domestic and

international research have provided more evidence of COVID-19 severely affecting and threatening the life of an elderly person with pre-existing medical conditions.

1. In a study published by the scientific medical journal "Journal diabetologia" (a French scientific paper), the authors confirmed the CDC's findings and indicated that with age above 55 years, the risk of dying from a COVID-19 infection is significantly increased when medical conditions such as type II diabetes pre-exist.

2. During autopsies of COVID-19-related deceased patients blood clots were found all over their examined bodies. See section II of this motion. See also: https://www.webmd/lung/news/20200424/blood-clots-are-another-dangerous-covid-19-mystery.


## IV Exposure to COVID-19

Arizona is one of the hotspots of the COVID-19 pandemic in the United States and USP Tucson is not an isolated island. Infections of staff members have been reported and COVID-19 may spread in USP Tucson. Contracting COVID-19 is therefore highly likely while in the custody of the BOP. In US v. Regan, US Dist. Lexis 98402, June 03, 2020, that court ruled saying:

   "The fact that there are no confirmed cases in
   Herlong is not reassuring, given that there is no
   facility-wide testing done there to separate
   those with COVID-19 from those who do not.
   (see ECF NO 1823 at 2, 7; ECF NO 1823 at 22-24

(arguing that the lack of testing results in under-
reporting of COVID-19)).

The court continues to say:

"The risk of spreading the disease is further
compounded by the fact that prison staff continue
to circulate in and out of the facility everyday.
The BOP presumably recognizes these risks and
has therefore placed Defendant in solitary con-
finement as a precaution. But that does
not eliminate the risk Defendant faces when
he enters shared spaces, such as showers and
phone blocks where COVID-19 can survive on
the surface for days and remain in the air for
hours." ( See ECF 1823 at 17; ECF 1828 at 16.)
"[L]imited group gathering[s] do not eliminate
the lingering presence of COVID-19 from these
shared spaces." (ECF 1827 at 18-19).

The court herewith clearly rejected that precautionary measures
are sufficient from COVID-19 to spread and as a preventative
measure to prevent infections

V. Precedent Cases

US courts have granted compassionate release according to
18 USC §3582 (c)(1)(A) on extraordinary and compelling
reasons in a number of cases, even for inmates with life
sentences or violent crimes or both, acknowledging the
seriousness and the dangerousness of the novel Corona-

virus, COVID-19, poses to the public and to inmates equally.
Petitioner wants to highlight some selected cases where courts
have granted compassionate release pursuant to § 3582(c)(1)(A)
on extraordinary and compelling reasons presented by COVID-19
and pre-existing medical conditions

a. United States v. Sawicz, 08-cr-287 (ARR)(E.O.N.Y Apr 10, 2020).
   Sawicz was charged with counts pertaining to child pornography. He
   pled guilty to those charges then was indicted with another child
   pornography charge and a violation of supervised release related
   to his first case. The court determined that the COVID-19
   outbreak combined with Sawicz' risk of suffering severe com-
   plications because of his hypertension justified waiver stating:
      " The delay that the defendant would experience if he had to
      wait for 30 days to expire before pursuing a motion for
      compassionate release in this court would put him at a sig-
      nificant risk of suffering catastrophic health consequences."
   The court also stated that extraordinary and compelling reasons
   warranted Sawicz' release by the way of the COVID-19 pandemic
   combined with Sawicz' particular vulnerability of complications
   from COVID-19 due to his hypertension. The court acknowledged
   that his charge was a serious charge and that Sawicz had
   already violated one term of supervised release. However,
   that " does not justify keeping the defendant in prison amidst
   an outbreak of a potentially deadly virus to which he is
   particularly vulnerable." Sawicz' compassionate release
   motion was granted.

b. United States v. Curtis, US Dist lexis 70804, April 22, 2020
Curtis was charged with a 9 count indictment including num-
erous offenses arising from sex trafficking operations including
minors. He was found guilty of six charges and sentenced
to six concurrent life sentences. Prior to this federal
offense Curtis was convicted of promoting prostitution with
a minor. The court acknowledged that his charges were
very serious. The court however also found that Curtis
suffers from severe medical conditions aggravated by the
current Coronavirus pandemic and that of April 21, 2020
there were 540 federal inmates and 323 B.O.P staff
members who have tested positive for COVID-19 nation-
wide, 23 who have died as of April 21, 2020. The court
granted Curtis' compassionate release based on extraordinary
and compelling reasons due to Coronavirus pandemic and
Curtis' medical conditions according to §3582(c)(1)(A).


c. US v. Ennis, US Dist. lexis 84957, May 14, 2020
Ennis has a lengthy history of criminal offenses starting in
1979 when he was first convicted and sentenced to 10
years in prison. In 1986 he was convicted again and
sentenced to 15 years in prison. He was paroled in 1988.
His parole was revoked in September 2000, however pa-
roled again in December 2000.
In August 2002 he was again convicted and sentenced
to life in prison for six felonies related to a large

scale drug trafficking operation.

Ennis filed a motion for compassionate release according to § 3582(c)(1)(A) on extraordinary and compelling reasons claiming his underlying medical conditions diabetes, hyperdonie, high cholesterol, arthritis, asthma and hyperthyroidism putting him at higher risk of complications in case of contracting Coronavirus

The court granted Ennis' motion for compassionate release.

d.  US v. Castillo, US Dist. Lexis 94611, May 28, 2020

Castillo a 65 year old woman was sentenced in 2009 to a life sentence for charges convicting her for conspiracies to posses with the intent to distribute cocaine and conspiracy for money laundering. Castillo was deemed to be an organizer.

Castillo's pre-existing medical conditions were diabetes, heart issues, hypertension, high cholesterol and glaucoma that were deemed significant vulnerabilities in case of contracting COVID-19. Castillo also had an elderly mother.

The court granted Castillo's motion for compassionate release on extraordinary and compelling reasons according to § 3582(c)(1)(A).

## VI   Administrative Remedy Process

a.   Petitioner has appealed to the Warden of FCC Tucson requesting to be granted compassionate release on June 29, 2020 (certified mail tracking no. 7018 3090 0000 4941 7250). The Warden has denied the request on July 26, 2020.

b.   Petitioner wants to direct his Honorable Court's attention to US v. Connell, US Dist. Lexis 81642, May 8, 2020 where the court ruled that "... where a party could 'suffer irreparable harm if unable to secure judicial consideration' any exhaustion [of administrative remedy] may be excused." The court also said: "given the speed of which COVID-19 is spreading within correctional institutions, each day of delay puts Defendant at higher risk of irreparable harm." This Honorable Court may therefore accept this motion for compassionate release prior to the exhaustion of the full administrative remedy process in order to prevent Petitioner from suffering irreparable harm in case of a COVID-19 infection. Petitioner also wishes to appeal to this Honorable Court to reject the B.O.P.'s decision from July 26, 2020.

## VII   Risk to Community

Petitioner wants to point out that if compassionate release is granted, Petitioner poses no risk to the community.

a.   Petitioner is in the low risk category. His point score

is 6 points on the scale that defines custody according to associated risk.

6. Moreover, Petitioner poses no risk to the U.S. populus; Petitioner is a German citizen and will be promptly deported upon release. Even absent the latter consideration U.S v. Mckean, NO 19-cr-380 (D.D.C March 28, 2020) made the following clear: Judge Moss declared:

> "[a]s counsel for the Defendant candidly concedes the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed, with one exception. That one exception, COVID-19, however not only rebuts the statutory presumption of dangerousness, see 18 USC § 3142(e), but tilts the balance in favor of release."

I understand that I would be handed over to I.C.E and that I may be required to serve time in Germany as per the Court's stipulations. However, COVID-19 in Germany is now at very low levels and the risk of infection even in a correctional institution in Germany is at a neglectable level, providing the necessary safety for Petitioner.

## VIII   Medical Records

Petitioner is in the process of collecting more medical documentation and medical records. Petitioner therefore wishes to supplement this motion as soon as these medical records become available.

## IX   Summary and Conclusion

Petitioner, Meinrad Kopp, a 58 year old male, currently in-carcerated in the United States Penitentiary Tucson, suffers from a range of pre-existing medical conditions that, according to the Center of Disease Control and other scientific and medical institutions make him vulnerable of serious consequences and possible death should he contract COVID-19 The pre-existing medical conditions are:

a. type II diabetes (Exh. No.1, pg 1 of 2, Lines C, D, E, G)
b. Hypertension (Exh. No.1, pg. 1 of 2, Line F, Exh. No.2, pg. 2 of 2, Line A)
c. 60-70% blocked brain artery (Exh. No.6, pg 1 of 2, Line I)
d. high cholesterol (Exh. No.1, pg. 1 of 2, Line B)
e. beginning kidney impairment, indicated by elevated levels of Micro-Albumin in urine (Exh. No.3, pg 1 of 1, Line A)
f. beginning arthritis (Exh. No.4, pg. 1 of 1, Line A)
g. Others (Exh's No.6, pg. 1 of 2, Lines C-F; Exh. No 7, page 1 of 2, Line A)

All conditions have been shown to severly complicate COVID-19 infections and increase mortality rates substantially.

Petitioner understands that he was convicted of a serious crime, but Petitioner asserts this Court that he is not the dangerous and violent person that he was assumed to be.

Petitioner has not received any write-ups during his incarceration and has no disciplinary records. Petitioner regularly attends religious service, is a member of the church choir and did not have a criminal history prior to his incarceration. Petitioner was a distinguished scientist in pharmaceutical industry and is extremely remorseful for his past actions.

The presented facts warrant a compassionate release. The spread of the virus has reached unprecedented levels and Petitioner's pre-existing medical conditions make him vulnerable to severe complications and even death if he contracts COVID-19. Petitioner is extremely worried that he might literally face a possible death sentence in a place being 10.000 kilometers away from his family if he contracts COVID-19, especially in the light of the upcoming flu season, that might significantly deteriorate / worsen COVID-19.

The presented facts warrant a compassionate release according to 18 USC § 3582(c)(1)(A) on extraordinary and compelling reasons. Granting compassionate release would acknowledge the severity of the circumstances and would prevent potential irreparabel harm from happening. It should be mentioned here that my family has committed to make every effort to pay the outstanding fine in full should compassionate release be granted.

Petitioner hereby wants to move this Honorable Court to grant his motion for compassionate release on extraordinary and compelling reasons in accordance with § 3582(c)(1)(A).

I appreciate the Court's due consideration and compassion in granting this motion in the face of the ongoing pandemic.

Petitioner is hereby seeking early release due to extra-
ordinary and compelling circumstances that could not have
been foreseen by the court at the time of sentencing.

Respectfully,                          Submitted August 10 2020


Meinrad Kopp
68931 - 018
United States Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734

In the District Court of the
Middle District of Florida
Orlando


CERTIFICATE OF SERVICE


The Petitioner, Meinrad Kopp, HEREBY CERTIFIES, under penalty of perjury that the aforementioned statements are true and correct. The instant motion complies with the Federal Rules of Civil Procedure. The filing of this instant motion also complies with the Mailbox Rule proscribed by Title 28 U.S.C. § 1746. The instant motion was placed in a pre-paid and properly marked envelope which was addressed and sent to this Court at 401 W. Central Blvd, Suite 1200, Orlando, FL 32801. A copy of the instant motion was also sent to the United States Attorney's Office for the Middle District of Florida.


Respectfully submitted on August 10, 2020.



Meinrad Kopp
Reg No. 68931-018
United States Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734


page 111