**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

VS.                                                    CASE NO: 6:17-cr-159-Orl-40DCI

MEINRAD KOPP

_____/

## <u>ORDER</u>

This cause is before the Court on Defendant Kopp's Motion for Compassionate Release. (Doc. 83). The Court does not require a response from the Government, and upon due consideration Defendant's Motion is denied.

**I.      BACKGROUND**

**A.      Procedural History**

The Defendant was indicted on one count of enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); one count of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(f)(1), and one count of transporting child pornography in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1). (Doc. 16). The Defendant plead guilty to Count One in exchange for the dismissal of Counts Two and Three. (Doc. 34, 40, 45). On December 13, 2017, the Court sentenced the Defendant to life imprisonment, supervised release for life, and a $250,000 fine. (Doc. 66, 67).

**B.      Offense Conduct**

In April 2017, Homeland Security Investigations conducted an undercover investigation into a deep/dark website dedicated to persons who have sexual interest in children. (Doc. 34, p. 18). An undercover agent ("**UCA**") posed as the father of a notional

13-year-old girl and solicited individuals interested in engaging in sexual relations with the child. (*Id.* at pp. 18–19). The same day Defendant Kopp replied asking the notional child's age and voiced his interest in having sex with the child and engaging in sadomasochistic activities. (*Id.* at p. 19).

Over the course of two months, Defendant Kopp, who resides in Switzerland, and the UCA engaged in numerous instant message and email communications during which the Defendant described in graphic detail the sadomasochistic acts he would perform on the child. (*Id.*). The Defendant expresses an unambiguous intent to inflict pain and humiliation upon the child for his sexual gratification, the details of which are set forth in the Plea Agreement and Final Presentence Investigation Report and which are frankly too obscene to merit repetition. (*See* Doc. 34, 50). Ultimately, Defendant Kopp–who was in the United States on business–purchased an airline ticket to Florida to spend a weekend torturing the child. (Doc. 34, p. 20). Defendant Kopp brought in his luggage instruments designed to inflict pain on the child.[1] (*Id.*). Fortunately, this was an undercover operation, and Defendant Kopp was arrested upon his arrival in Orlando, Florida. (*Id.* at p. 21).

## II.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

A court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with applicable policy statements of the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Previously, only the BOP could file

---

[1]   During one communication the Defendant admitted to having beaten an 11-year-old girl with a leather belt for his sexual gratification. (Doc. 50, ¶ 32).

a motion for compassionate release. The First Step Act amended the provision to allow defendants to file such a motion as well. *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1). Before a defendant may file a motion, however, the defendant must have either (a) "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (b) 30 days must have lapsed since the receipt of such a request by the warden of the prison. 18 U.S.C. § 3582(c)(1)(A).

The failure to exhaust administrative remedies within the BOP is fatal to a defendant's motion for compassionate release. *United States v. Estrada Elias*, No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129-JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 Fed. App'x. 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241); *United States v. Roberson*, 746 Fed. App'x. 883, 885 (11th Cir. 2018) (same); *United States v. Alexander*, 609 F.3d 1250, 1260 (11th Cir. 2010) (same).

The Defendant claims the he submitted a motion pursuant to § 3582(c)(1)(A) to the Warden in charge of his facility on June 29, 2020 and that the Warden denied his request on July 26, 2020. (Doc. 83, p. 12). However, the Defendant fails to submit any documentation to corroborate his proffer that an appropriate request was submitted to the Warden. The exhaustion of administrative remedies is a jurisdictional precondition which the Defendant must meet before the Court may entertain his motion. The Defendant's mere say-so is insufficient to establish that he has satisfied this jurisdictional requirement. Accordingly, the Defendant's motion is due to be denied.

### B.    The Merits

While the Court need not reach the merits of Defendant's motion, it will do so for completeness. The Court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with applicable policy statements of the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). "Extraordinary and compelling circumstances" include (1) a terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. *See* USSG §1B1.13 comment note 1. Assuming an extraordinary or compelling reason is found to exist, the Court must consider whether the Defendant is a danger to the public. 18 U.S.C. § 3142(f); USSG §1B1.13(2). Additionally, the Court should consider whether the factors set forth in 18 U.S.C. § 3553(a) favor release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

### 1.    *Defendant's Medical Conditions*

The Defendant's medical records from the Bureau of Prisons, dated January 6, 2020, reveal the following medical conditions: Cerebral infarction; Occulsion and stenosis of cerebral artery; Hyperlipidemia; Type 2 diabetes mellitus; hypertension, and possible arthritis or degenerative disc disease changes (low back). (Doc. 83–1, pp. 1–7). The medical records also show that the Defendant suffers from major depressive disorder, recurrent; presbyopia (the natural gradual loss of the eye's ability to focus on nearby objects); hearing loss, and tinnitus. (*Id.* at p. 8).

### 2.    *The BOP Response to COVID-19*

The Centers for Disease Control and Prevention ("CDC") has determined that certain conditions can present an increased risk of an adverse response to COVID–19

infection.[2] However, the BOP has in place mechanisms for addressing the risk presented by COVID-19. The BOP posts updates and details concerning their response to the pandemic on their website. *See* http://www.bop.gov/coronavirus/index.jsp. The BOP has had a Pandemic Influenza Plan in place since 2012. *See* BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan flu model1.pdf.

That protocol establishes a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. Consistent with that plan, the BOP began planning for potential coronavirus transmissions in January 2020 by establishing a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization. On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside facilities.

The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, to stop any spread of the disease. Only limited gatherings are allowed consistent with social distancing, to facilitate commissary, laundry, showers, telephone, and computer access. And BOP has severely limited the movement of inmates and detainees among its

---

[2]     *See Coronavirus Disease 2019 (COVID-19) at https://www.cdc.gov/coronavirus/2019-ncov/need-estra-precautions/groups-at-higher-risk.html (last accessed on June 12, 2020).*

facilities. Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for at least 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. Medical staff are empowered to bar from the facility any staff registering a temperature of 100.4 degrees Fahrenheit or higher. Inmates and staff are also provided with masks for use when social distancing is impactable. Furthermore, contractors' access to the facility is limited to essential services, and in-person family and legal visits have been suspended.

### 3.   The Potential Risk of Exposure

The Defendant acknowledges in his motion that there have been no confirmed cases of COVID–19 in FCC Tucson, where he is incarcerated. The Court has held that potential COVID-19 exposure is not an extraordinary and compelling reason to grant release. Many district courts have agreed with this conclusion. *See, e.g. United States v. Heromin, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (J. Covington); United States v. Peaks*, No. 16-20460, 2020 WL 221423, at *2 (E.D. MI. May 7, 2020) (denying compassionate release to 31-year-old inmate at Elkton with obesity and hypertension because "the generalized risk of contracting COVID-19 and developing more serious symptoms is not akin to the type of extraordinary and compelling reasons justifying compassionate release."). As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia,* 954 F.3d

594, 597 (3d Cir. 2020).[3] At best, Defendant Kopp argues that an uncontrollable outbreak of COVID–19 at FCC Tucson is hypothetically possible. Such speculation is not enough to warrant the release of a violent offender who has served only a fraction of his sentence.

### C.   18 U.S.C. § 3553(a) Factors

As the Attorney General observed in his remarks about the desirability of expanding the number of inmates considered for home release[4], in assessing which inmates should be granted home confinement several factors should be considered, including:

> The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

The Defendant's offense of conviction is a serious sex crime, and his confession to having perpetrated a prior offense, coupled with his willingness to travel great distances to abuse the notional minor, weigh heavily against his release from custody. This combined with

---

[3]    *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19 pandemic).

[4]    *See* Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons ("Barr Memorandum"), Mar. 26, 2020. https://www.justice.gov/file/1262731/download

the BOP's demonstrated commitment and capacity to address the COVID-19 virus renders Defendant's request improvident.

**III.   CONCLUSION**

For these reasons, the Defendant's Motion for Release (Doc. 83) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 19, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties