# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                                                           **CASE NO: 6:17-cr-159-PGB-DCI**

**MEINRAD KOPP**

_____/

## OMNIBUS ORDER

This cause is before the Court on the following:

1. Defendant's Motion to Withdraw Plea of Guilty (Doc. 144);

2. Defendant's Motion to Dismiss for Vindictive Prosecution (Doc. 145);

3. Defendant's Motion to Compel Discovery (Doc. 143);

4. Government's Response in Opposition to Defendant's Motion to Withdraw Plea of Guilty (Doc. 146);

5. Government's Response in Opposition to Defendant's Motion to Dismiss for Vindictive Prosecution (Doc. 147);

6. Government's Response to Defendant's Motion to Compel Discovery (Doc. 148); and

7. Defendant's Replies to the Government's Responses. (Docs. 151–153).

Upon due consideration, the Defendant's motions are denied.

## I.   PROCEDURAL HISTORY

The Defendant was indicted on one count of enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); one count of traveling in

interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(f)(1); and one count of transporting child pornography in interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1). (Doc. 16). The Defendant pled guilty to Count One in exchange for the dismissal of Counts Two and Three. (Docs. 34, 40, 45). On December 13, 2017, the Court sentenced the Defendant to life imprisonment, supervised release for life, and a $250,000 fine. (Docs. 66, 67).

On appeal, the Defendant raised three (3) issues: (1) the legal sufficiency of his guilty plea because the magistrate judge did not inquire about his competency considering a serious suicide attempt several weeks before his plea hearing; (2) the denial of his motion to continue sentencing; and (3) the procedural and substantive reasonableness of his sentence. (Doc. 88, p. 2). The Eleventh Circuit reviewed the first ground for plain error and found none, citing in part the comprehensive psychiatric and psychosexual evaluation of Kopp performed by his expert, Dr. Danziger. (*Id.* at pp. 7–8). The Circuit Court found, however, that the district court erred in denying the motion to continue sentencing, vacated the Defendant's sentence, and remanded the case to the district court for resentencing. (*Id.* at p. 11).

On July 15, 2022, in anticipation of the resentencing hearing, the Government filed its Notice Regarding MLAT[1] Request to Switzerland and advised the Court and the defense that pursuant to its MLAT Request the Swiss Federal

---

[1] Mutual Legal Assistance Treaty.

2

Police would be producing evidence seized from the Defendant's home in 2017. (Doc. 127). And on August 10, 2022, the Government filed a Motion to Seal Response to the United State's MLAT Request. (Doc. 133). The next day, the Defendant filed an Unopposed Motion to Continue Sentencing on the basis that defense counsel "needs additional time to review, investigate, and respond to these new sentencing materials." (Doc. 135). The Court granted the Defendant's motion and rescheduled sentencing in this matter, (Doc. 136), and the Court granted the Government's Motion to Seal the Response to the MLAT Request. (Doc. 140). The next day, August 12, 2022, the Government filed the materials received in response to the MLAT under seal. (Doc. 141). Since sentencing was scheduled for August 17, 2022, the Court continued sentencing to allow time to review the materials. (Doc. 142).

After the MLAT material was filed under seal without objection by the Defendant, the defense filed a Motion to Withdraw Plea of Guilty in Light of Government's Breach of the Plea Agreement (Doc. 144) and Motion to Dismiss for Vindictive Prosecution. (Doc. 145). The Defendant also filed a Motion to Compel Discovery and requested production of the Government's communications with the Swiss authorities relating to its MLAT request. (Doc. 143).

## II.     DISCUSSION

### A.     LEGAL STANDARDS

#### 1.     Motion to Withdraw Guilty Plea

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Castillo*, 568 F. App'x 774, 777 (11th Cir. 2014) (citing *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996)). "Whether a plea agreement is violated is determined according to the defendant's reasonable understanding when he entered the plea." *Id.* (citing *United States v. Horsfall*, 552 F.3d 1275, 1281 (11th Cir. 2008). In assessing an argument that the government breached the plea agreement, the Court must "first determine the scope of the government's promises." *United States v. Pitts*, 794 F. App'x 868, 871 (11th Cir. 2019) (citing *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004)). The Court "must apply an objective standard and 'must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea.'" *Id.*

Moreover, "[a]fter the district court accepts a guilty plea and before sentencing, the defendant may withdraw the plea if (1) the district court rejects the plea agreement, or (2) 'the defendant can show a fair and just reason for requesting withdrawal.'" *Castillo*, 568 F. App'x at 780 (citation omitted). That said, the defendant bears a heavy burden to show that a guilty plea, which was knowingly and voluntarily entered, should be withdrawn. *Id.* (citation omitted).

### a. *Defendant Kopp's Motion to Withdraw*

The Government promised the Defendant that it would "recommend to the Court that the defendant be sentenced to a term of imprisonment of up to 20 years, which may require an upward variance in the defendant's applicable guideline range as determined by the Court." (Doc. 34, p. 4, ¶ 7). The Government cautioned the Defendant that the Court is not bound by its recommendation. (*Id.* at pp. 14–15, ¶ 6). And the Government represented to the Defendant that it had a duty to provide relevant sentencing information to the Court, as follows:

> The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

(*Id.* at p. 13, ¶ 4).

In short, while the Government promised to recommend a 20-year sentence, it did not promise to conceal or downplay relevant information from the sentencing Judge — nor could it. The instant motion turns on whether the Government's decision to request the Swiss authorities to produce evidence recovered from the Defendant's home in anticipation of resentencing, and after the

5

Defendant filed a motion to withdraw his plea, constitutes a breach of the agreement.[2]

The Defendant concedes that the Government "initially complied with its promise, [and] recommend[ed] a 20-year sentence at Dr. Kopp's first sentencing hearing." (Doc. 144, p. 2). The Defendant now contends the Government has breached the plea agreement by "beginning to work actively to ensure that this Court re-sentences Dr. Kopp not to the 20-year sentence the government promised it would recommend in the plea agreement, but the life sentence the Court had imposed once before." (*Id*.).  In support of this argument, the Defendant notes that the Government decided to pursue evidence relating to child pornography seized by Swiss authorities from the Defendant's residence, via an MLAT, after the case was remanded for resentencing and after the Defendant filed a motion to withdraw his plea. (*Id*. at 4). The Defendant argues that the Government knew the Swiss authorities had seized this material on June 21, 2017 and had brought this to the Court's attention at the first sentencing proceeding. (*Id*. at p. 3). However, the Government did not request copies of the seized evidence from its Swiss counterpart prior to the initial sentencing. (*Id*. at p. 4). The recent reversal, the defense argues, is evidence that the Government is paying mere "lip service" to its promise to recommend a 20-year sentence in violation of the agreement. (*Id*. at p. 5). That is, the defense claims "[t]he materials the government has belatedly

---

[2]  The Government transmitted its MLAT request to The Central Authority for Switzerland on July 8, 2022. (Doc. 141-5).

submitted to this Court undoubtedly make Dr. Kopp look worse than he did previously and encourage the imposition of a harsher sentence than may have been warranted before their disclosure." (*Id.* at p. 18). Finally, the Defendant submits that the Government "implicitly encourage[s] the Court to impose a harsher punishment" by "gratuitously" characterizing the Defendant's conduct as "egregious and despicable."[3] (*Id.* at p. 5). The Defendant's argument does not, however, adequately take into consideration the plain language of the plea agreement or the arguments advanced by the Government at the first sentencing.

The Government filed a sentencing memorandum prior to the first sentencing proceeding in which it argued that "[t]he egregious nature of the defendant's conduct simply shocks the conscience, and the seriousness of his conduct cannot be overstated." (Doc. 61, p. 8). The Government characterized the Defendant as desiring to inflict pain on the child by "tying her up, beating and gagging her with a 'dirty panty,' attaching clamps with weights to her vaginal labia, inserting his hand and 'spicy chicken fingers' inside her vagina, tearing her pubic hair, treating her like a dog, among other violent acts." (*Id.* at pp. 1–2). The Government further argued that on "the spectrum of enticement cases, this has to be one of the most sadistic as to the extent of intended harm to a child." (*Id.* at pp. 4–5). And the Government noted that the Defendant "intended to video record as he engaged in sadomasochistic activity with the child and for that purpose, he

---

[3] At sentencing, the Court described the Defendant's conduct as "heinous, atrocious, unfathomable, and abominable . . . nothing short of horrific." (Doc. 77 at 66:16—67:1).

7

brought a camera." (*Id.* at p. 8). The Government cited the Eleventh Circuit which has held that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." (*Id.* (citing *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009))). Finally, the Government informed the Court that the Swiss authorities discovered "137,000 depictions of child abuse material and violence" and "approximately 9000 depictions contain child pornography" with the "remaining depictions . . . contain[ing] violent pornography." (*Id.* at pp. 9–10). Nonetheless, the Government recommended a sentence of 20 years imprisonment.[4] (*Id.* at p. 3). And the Defendant concedes the Government's prior argument was consistent with the promises contained in the Plea Agreement. Now the Defendant submits that the same arguments constitute a breach of the plea agreement.

It is also noteworthy that the Defendant's original sentencing memorandum stated that "[h]ad the undercover officer not reached out to Mr. Kopp, the Defendant would never have committed the action in this case." (Doc. 63, p. 2). The defense further argued that "the undercover agent was persuading and encouraging Mr. Kopp to engage in such illegal conduct by telling him that he engages in sexual activity with his daughter and that he and his daughter had regular sexual activity with other couples." (*Id.* at p. 3). At the sentencing hearing, the defense reiterated its contention that "this case would not have happened had

---

4   The Government's advocacy was designed to justify its request for an upward variance, because the Government could not have known the Court would impose a sentence greater than the Government's recommendation.

8

the undercover agent not made this advertising and had not been in these encouraging communications with him." (Doc. 77, 37:15–22). The Defendant has not retracted these arguments.

The Government's current two-page sentencing memorandum incorporates by reference the prior memorandum and "also provides notice that it will be requesting a sentence of 20 years' imprisonment, a life term of supervised release, and a fine of $250,000." (Doc. 124, p. 1). The Government reiterates its characterization of the Defendant's offense conduct as egregious and despicable and once more observes that the Defendant's "main purpose was to inflict severe physical and emotional pain on the notional child." (*Id.*). The Government advocates for a "lengthy sentence" of 20 years imprisonment. (*Id.* at p. 2). In response, the Defendant supplemented the previously filed sentencing memorandum and requested a sentence of 20-years imprisonment, focusing on the avoidance of unwarranted sentencing disparity. (Doc. 125).

The Government correctly argues that it does not breach a plea agreement by presenting victim impact statements or by arguing in support of its recommended sentence, particularly where, as here, the plea agreement permits the Government to provide complete information regarding the Defendant's background, character, and conduct including uncharged criminal conduct (Doc. 9). *See United States v. Margenat-Castro*, 754 F. App'x 879, 886–87 (11th Cir. 2018) ("[T]he government does not breach a plea agreement by providing pertinent background information to the probation officer or the court as long as

9

it does not expressly violate any of its obligations under the agreement.")). The submission of information received from Swiss authorities in response to the MLAT request is consistent with the terms of the Plea Agreement which imposes an obligation on the prosecution to report to the Court and to Probation relevant information concerning the "background, character, and conduct of the defendant" and to "correct any misstatements or inaccuracies." (Doc. 34, p. 13, ¶ 4). Additionally, the information obtained from the Swiss authorities is largely duplicative of information related to the Court, without objection, in the Government's initial sentencing memorandum.[5]

The response to the MLAT includes an interview of Ms. Gianna, the Defendant's domestic partner, and her description of their relationship is consistent with the description found in Dr. Danziger's report. (Doc. 141-2, bates 0573–0581; Doc. 50, pp. 48–60). The response also contains a generic description of the pornographic images and video recordings recovered from the Defendant's home. (Doc. 141-2, p. 0588). No images are attached to the response. The response also contains a history of internet posts by the Defendant where he seeks sexual encounters with "young women of legal age." (*Id.* at pp. 0593–0600). Some of the posts contradict the Defendant's claims that he was only engaged in fantasy, did not intend to degrade or injure the notional child in the instant case, and that the

---

[5] Rather than object to the Government's motion to file the materials received pursuant to its MLAT request, the Defendant requested a continuance to evaluate the evidence. (Doc. 135). The defense cannot stand silent when the Government seeks leave to file evidence for the Court's consideration and then cite the unopposed material as evidence of a breach of the plea agreement.

undercover agent's actions prompted his illegal activity. (*Id.*). The Government is entitled to correct the Defendant's misrepresentations.

The defense is correct that the Government could have requested this information sooner, but the agreement is clear that the Government has the right and the obligation to report all relevant sentencing information to the Court and to correct misstatements or inaccuracies in the Defendant's argument. Moreover, resentencing is just that — sentencing anew, and the parties are not tethered to the evidence and argument offered at the initial sentencing. The Government has consistently described the Defendant's offense conduct in strong terms in support of its request for an upward variance from the minimum mandatory 10-year sentence to the recommended 20-year sentence. The Government's characterization of the evidence has, so far, been consistent with the Stipulated Facts contained in the Plea Agreement and the Presentence Investigation Report. Simply put, nothing the Government has done thus far amounts to advocating for a sentence that is greater than the recommendation contained in the Plea Agreement. Accordingly, the Defendant's Motion to Withdraw Plea Agreement (Doc. 144) is denied.[6]

---

[6] The Defendant cites various decision discussing when a prosecutor has breached a plea agreement by advocating for a sentence that is higher than the recommended sentence contained in the agreement. Whether a prosecutor's argument or actions at or prior to the sentencing hearing constitutes a breach is a fact-specific determination, often viewed through the lens of the sentencing hearing itself. At this juncture the Court does not find the submission of the MLAT material "served no purpose but to argue for a harsher punishment." *See, United States v. Morales Heredia*, 768 F.3d 1220, 1228–29 (9th Cir. 2014).

### 2. *Motion to Dismiss for Vindictive Prosecution*

"The dismissal of an indictment on the ground of prosecutorial misconduct is a discretionary call" which the Court of Appeals reviews for an abuse of discretion. *United States v. Jones*, 601 F.3d 1247, 1260 (11th Cir. 2010) (citing *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). The government may not "without explanation, increase the number of or severity of th[e] charges in circumstances which suggest that the increase is retaliation for the defendant's assertion of statutory or constitutional rights." *Id.* (citation omitted). When the government adds charges following a defendant's successful appeal, a presumption of vindictiveness arises which the government may rebut by showing "that it was impossible to proceed on the more serious charge at the outset." *Id.* at 1261. Once rebutted, the defendant has the burden of affirmatively demonstrating "actual prosecutorial vindictiveness. In other words, he must show that the government's justification is pretextual." *Id.* (citations omitted).

#### a. *Defendant Kopp's Motion to Dismiss*

The Defendant relies upon the same factual predicate that supports his motion to withdraw his plea of guilty in arguing that the submission of MLAT materials constitutes prosecutorial vindictiveness. (Doc. 145, p. 2). The defense concedes that the Government "more or less complied with" the plea agreement at the Defendant's first sentencing hearing, even though the Government condemned the Defendant's conduct and emphasized the sadistic acts he intended to perpetrate against a child. (*Id.* at p. 3). As discussed in section II(i)(a), at the first

sentencing hearing the Government also informed the Court that the Swiss authorities discovered 137,000 depictions of child abuse material and violence, with approximately 9000 depictions containing child pornography. And yet, the Government's arguments and reliance upon the pornographic material seized from the Defendant did not amount to a breach of the plea agreement. Now the Defendant urges the Court to find that the act of formally requesting this evidence from Swiss authorities constitutes vindictiveness. The Court disagrees.

The Defendant's claim of vindictive prosecution turns on the fact that the Government submitted its formal MLAT request to Switzerland after the case was remanded and after the Defendant filed his first motion to withdraw his guilty plea. (*Id.* at p. 4). As further evidence of vindictiveness, the Defendant points to the Government's decision not to file a "formal joint recommendation of 20 years" imprisonment. (*Id.* at p. 5). And, finally, the defense proffers that during a telephone conversation with counsel for the Government, opposing counsel indicated that the Defendant's motion to withdraw his plea, "especially if it was successful," may result in the Government seeking additional material from the Swiss authorities. (*Id.*).

As discussed above, the material received from the Swiss authorities are duplicative of the information that was before the Court at the first sentencing proceeding and, at least in part, rebut the Defendant's contention that he did not intend to harm the notional child and was persuaded to engage in this conduct by the undercover agent's representations. The Government is expressly permitted by

13

the Plea Agreement to report relevant information to the Court and to correct misstatements or inaccuracies by the Defendant. (Doc. 34, p. 13). Moreover, the Government is not required to file a "joint" sentencing recommendation with the defense. And the Government is not precluded from requesting evidence from the Swiss authorities which may be helpful to the prosecution in the event the Court were to have allowed the Defendant to withdraw his guilty plea and to then proceed to trial.[7] Finally, the Government has yet again advocated for a 20-year term of imprisonment and adopted its earlier sentencing memorandum to which the Defendant had no objection.

Simply put, the Defendant's contention that the Government is attempting to "subvert the plea agreement" is not supported by the facts. Accordingly, the Court does not find a presumption of prosecutorial vindictiveness in the Government's MLAT request, or in the Government's most recent sentencing memorandum and recommendation. The Government has not charged the Defendant with additional offenses since the case was remanded or in response to the Defendant's post-remand motion practice. To the contrary, the Government has persisted in its recommendation for a 20-year sentence. For these reasons, the

---

[7] The defense claims the Government's notice of filing MLAT materials included "an implied request for a continuance of sentencing" to which the Court acceded. (Doc. 145, p. 6). The Defendant ignores the fact that he moved for a continuance of the sentencing hearing once it became apparent that evidence would be obtained from the Swiss authorities. Continuing the sentencing proceedings was, therefore, in the best interest of the prosecution, the defense, and the Court.

Defendant's Motion to Dismiss for Prosecutorial Vindictiveness (Doc. 145) is denied.

### 3.  *Defendant Kopp's Motion to Compel Discovery*

The Defendant seeks discovery of the Government's communications with the Swiss authorities concerning the Government's MLAT request on the basis that it is necessary to fully litigate his Motion to Withdraw Plea Agreement and Motion to Dismiss for Prosecutorial Vindictiveness. (Doc. 143). The Defendant submits that a defendant's *Brady* rights continue beyond the entry of a guilty plea, citing decision from outside of this Circuit. (*Id.* at pp. 5–6). The Government counters that most circuits require a defendant to advance "some objective evidence tending to show the existence of prosecutorial vindictiveness" before compelling discovery. (Doc. 148, p. 2). While the Eleventh Circuit has not announced a standard for compelling discovery where a defendant accuses the government of prosecutorial vindictiveness, the Court is persuaded that a defendant must at least make a prima facie showing of vindictiveness before discovery is proper. *See United States v. Bucci*, 582 F.3d 108, 113–14 (1st. Cir. 2009); *see also United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).

For the reasons discussed in the Court's ruling on the Defendant's Motion to Withdraw Plea Agreement and Motion to Dismiss for Prosecutorial Vindictiveness, the Court does not find the Government's conduct post-remand is improper. Accordingly, the Defendant's request to conduct discovery of the Government's communications with the Swiss authorities (Doc. 148) is denied. Moreover, the

Government has represented to the Court that it did not make any representations outside the statements contained in its MLAT request, which the Defendant already has, rending the motion moot.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERD AND ADJUDGED** as follows:

1. The Defendant's Motion to Compel Discovery (Doc. 143) is **DENIED**.

2. The Defendant's Motion to Withdraw Plea of Guilty (Doc. 144) is **DENIED**.

3. The Defendant's Motion to Dismiss for Vindictive Prosecution (Doc. 145) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 23, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties